UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN HURLBURT, )<br>    *Plaintiff*, )<br>)<br>    *v.* )<br>)<br>BRADLEY CONSULTING & MANAGEMENT, )<br>INC., )<br>    *Defendant*. ) | 1:16-cv-00566-JMS-MPB |

**ORDER**

Presently pending before the Court in this breach of contract case is Defendant Bradley Consulting & Management, Inc.'s ("Bradley") Motion to Dismiss Second Amended Complaint. [Filing No. 26.]

**I.**
**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of the complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state

a claim for relief. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The factual allegations in the Second Amended Complaint filed by Plaintiff John Hurlburt, which the Court must accept as true for purposes of ruling on the pending motion, are as follows:

Mr. Hurlburt began working for Bradley as a Sales Consultant in August 2014, earning an annual salary of $43,000. [Filing No. 21 at 2.] Mr. Hurlburt met and exceeded Bradley's legitimate work expectations as a Sales Consultant. [Filing No. 21 at 2.] In May 2015, Mr. Hurlburt received an offer of employment from Alpha Review Corporation ("Alpha") for a permanent position as Sales Representative at a base salary of $73,000 plus commission (for an estimated annual total of $100,000 to $110,000). [Filing No. 21 at 2.] On or about June 1, 2015, Mr. Hurlburt notified Bradley president Eric Bradley that he was going to accept the position with Alpha and that he would be resigning from Bradley effective June 9, 2015. [Filing No. 21 at 2.] Mr. Hurlburt also told Mr. Bradley what his compensation would be in the new position at Alpha. [Filing No. 21 at 2.]

On or about June 5, 2015, Mr. Bradley emphasized to Mr. Hurlburt in a telephone conversation the importance of Mr. Hurlburt's service at Bradley and convinced Mr. Hurlburt to stay on at Bradley. [Filing No. 21 at 3.] To entice and induce Mr. Hurlburt to stay on at Bradley, Mr. Bradley offered to promote Mr. Hurlburt to Director of Sales and to substantially increase his

salary.  [Filing No. 21 at 3.]  Mr. Hurlburt accepted Mr. Bradley's offer to stay during that telephone conversation.  [Filing No. 21 at 3.]

In a series of email messages that followed the June 5, 2015 telephone conversation, Mr. Bradley offered to beat Alpha's base salary offer by $20,000.[1]  [Filing No. 21 at 3.]  Specifically, Mr. Hurlburt's base salary increased by 216.28% from $43,000 to $93,000.  [Filing No. 21 at 3.]  Additionally, the Director of Sales position included a five percent commission based on growth from the previous year.  [Filing No. 21 at 3.]  During the email message exchange, Mr. Hurlburt was told that his position as Director of Sales would be a permanent position.  [Filing No. 21 at 3.]

The Director of Sales oversaw the individual sales representatives, attended conferences and association meetings, interfaced with prospective and existing clients, and was the "face of the company."  [Filing No. 21 at 3.]  Between June 2015 and February 2016, Mr. Hurlburt pursued new clients, maintained existing client accounts, attended conferences and association meetings throughout the country, and was recognized by Bradley clients as the "face" of Bradley.  [Filing No. 21 at 3.]

On February 3, 2016, Bradley terminated Mr. Hurlburt's employment.  [Filing No. 21 at 3.]  In the meantime, Alpha had hired someone else to fill the position it had offered to Mr. Hurlburt.  [Filing No. 21 at 4.]  Mr. Hurlburt has been unemployed since February 3, 2016.  [Filing No. 21 at 4.]

Mr. Hurlburt initiated this litigation on March 13, 2016, and filed the operative Second Amended Complaint (the "Complaint") on June 9, 2016.  [Filing No. 21.]  He asserts claims for: (1) breach of contract; (2) promissory estoppel; and (3) negligent misrepresentation.  [Filing No.

---

[1] The Complaint alleges that the emails took place after "the June 5, 2016 conversation," but this appears to be a typographical error and should be "the June 5, 2015 conversation."  [See Filing No. 21 at 3.]

- 3 -

21 at 4-5.] Bradley has moved to dismiss the Complaint in its entirety, [Filing No. 26], Mr. Hurlburt opposes the motion, [Filing No. 30], and the motion is now ripe for the Court's consideration.

### III.
### DISCUSSION

Bradley argues that Mr. Hurlburt has failed to allege that he was not an at-will employee and that, in any event, he has failed to adequately allege claims for breach of contract, promissory estoppel, or negligent misrepresentation. [Filing No. 27 at 4-17.] The Court will consider Bradley's arguments in turn.

At the outset, the Court notes that it is exercising diversity jurisdiction over this matter. [*See* Filing No. 21 at 1-2 (alleging that Mr. Hurlburt is a citizen of Ohio, Bradley is an Indiana corporation with its principal place of business in Indiana and therefore an Indiana citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs).] A federal court sitting in diversity must apply the choice-of-law provisions of the forum state. *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice-of-law rules determine the applicable substantive law"). The parties rely upon Indiana law in analyzing Mr. Hurlburt's claims. [*See, e.g.*, Filing No. 27 at 10-11 (Bradley citing Indiana law); Filing No. 30 at 5 (Mr. Hurlburt citing Indiana law).] Absent a disagreement, the Court will apply Indiana law. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits…. *Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.* We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they

were likely to affect the outcome the parties would be likely to contest them)") (emphasis added). The Court will apply Indiana law in analyzing the pending motion.

### A. At-Will Employment

Bradley argues that Mr. Hurlburt does not allege that he had anything other than an employment at-will relationship with Bradley, so Bradley could terminate his employment without incurring any liability. [Filing No. 27 at 4.] It contends that Mr. Hurlburt has not alleged that he fell within any of the exceptions to Indiana's employment-at-will doctrine. [Filing No. 27 at 4-5.] Bradley argues further that even if there was an oral employment contract, it was not enforceable because it was not for a definite period of time. [Filing No. 27 at 5.] Bradley asserts that Mr. Hurlburt has not alleged any facts that would convert his at-will employment relationship to a contractual relationship. [Filing No. 27 at 6-7.] It argues that the fact that Mr. Hurlburt turned down an offer of employment to stay on at Bradley is not adequate, independent consideration to create a contract. [Filing No. 27 at 7-8.] Bradley contends that Mr. Hurlburt's attempt to assert a claim for promissory estoppel does not rebut the presumption that his employment with Bradley was at-will, and that he does not assert his promissory estoppel claim with any degree of particularity so he does not fall within the promissory estoppel exception to the employment-at-will doctrine. [Filing No. 27 at 8-10.]

Mr. Hurlburt responds that he falls within two of the three exceptions to Indiana's employment-at-will doctrine – that there was adequate independent consideration to support an employment contract (here, the fact that he gave up the job at Alpha), and that promissory estoppel applies because Mr. Hurlburt accepted the new position at Bradley with the understanding that it would be permanent. [Filing No. 30 at 3-4.] Accordingly, Mr. Hurlburt argues, his claims should not be dismissed based on Indiana's employment-at-will doctrine. [Filing No. 30 at 5.]

On reply, Bradley argues that the Complaint does not contain allegations that the new position at Bradley was permanent, that Bradley ever told Mr. Hurlburt it was offering him permanent employment, or that Bradley actually promised him permanent employment. [Filing No. 31 at 5.] Bradley also asserts that giving up a job offer – as Mr. Hurlburt did here – is insufficient independent consideration such that an employment contract exists. [Filing No. 31 at 5.]

Indiana follows the employment-at-will doctrine, which provides that "employment may be terminated by either party at will, with or without a reason." *Harris v. Brewer*, 49 N.E.3d 632, 639 (Ind. Ct. App. 2015). Under Indiana law, "[t]here is a strong presumption that employment…is at-will." *Harris*, 49 N.E.3d at 639 (citing *Ogden v. Robertson*, 962 N.E.2d 134, 145 (Ind. Ct. App. 2012)). There are three exceptions to the employment-at-will doctrine:

> [F]irst, if an employee establishes that 'adequate independent consideration' supports the employment contract, the Court generally will conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause…. Second, [there is] a public policy exception to the employment-at-will doctrine if a clear statutory expression of a right or duty is contravened…. Third,…, in certain instances, an employee may invoke the doctrine of promissory estoppel [by] plead[ing] or assert[ing] the doctrine with particularity. The employee must assert and demonstrate that the employer made a promise to the employee; that the employee relied on that promise to his detriment; and that the promise otherwise fits within the Restatement test for promissory estoppel.

*Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 718 (Ind. Ct. App. 1997). Mr. Hurlburt does not argue that his employment was anything other than at-will, but argues that his situation falls within the first and third exceptions to Indiana's employment-at-will doctrine.

### 1. *Adequate Independent Consideration*

First, Mr. Hurlburt contends that he provided adequate, independent consideration such that his at-will employment should be converted into employment which could only be terminated for good cause. [Filing No. 30 at 3-4.] Mr. Hurlburt claims that this independent consideration was "[giving] up a permanent position at [Alpha] in order to become the 'face' of [Bradley]."

[Filing No. 30 at 4.] Indiana courts have held that adequate independent consideration does not exist when an employee gives up an existing job, without more, to take another job. *Ohio Table Pad Co. of Indiana, Inc. v. Hogan*, 424 N.E.2d 144, 146 (Ind. Ct. App. 1981). However, if an employee is uniquely qualified for his position due to his training and the specialized nature of his employment, the employer knows that the employee's former job had "assured permanency," and the employee only accepted the new job "upon receiving assurances the new employer could guarantee similar permanency," adequate independent consideration does exist. *Romack v. Public Service Co. of Indiana, Inc.*, 499 N.E.2d 768, 778 (Ind. Ct. App. 1986), *modified*, 511 N.E.2d 1024 (Ind. 1987).

Although these principles apply when an employee has left a job, and then was terminated from a new job, it does not appear that any Indiana court has recognized that turning down an offer of employment to stay at a current job, even in a new position, constitutes adequate independent consideration. Indeed, none of the cases Mr. Hurlburt relies upon involved that scenario. Conversely, at least one case in this District, applying Indiana law, has rejected the notion that turning down an offer of employment constitutes adequate independent consideration. In *Sweet v. Indianapolis Jet Center, Inc.*, 918 F.Supp.2d 801 (S.D. Ind. 2013), the plaintiff accepted a job offer from a new employer because he was concerned he would have to relocate with his current employer. *Id.* at 803. When he notified his current employer, the current employer offered him a six-year contract if he agreed to stay on. *Id.* at 803-04. The plaintiff withdrew his acceptance of the job offer from the new employer, and agreed to stay on with his current employer. *Id.* at 804. Shortly thereafter, the plaintiff's salary was cut, his title was changed, and he was asked to relocate. *Id.* at 804. Unwilling to relocate, the plaintiff resigned and sued his employer for, among other things, breach of contract and promissory estoppel. *Sweet* found that the facts plaintiff pled did

not plausibly suggest that adequate independent consideration existed because the plaintiff only alleged that he gave up the job he was offered by the new employer and "[t]hat is, as a matter of law, insufficient." *Id.* at 808 (citing *Wior v. Anchor Indus. Inc.*, 669 N.E.2d 172, 176 (Ind. 1996)).

Similarly, here, Mr. Hurlburt alleges that he turned down the Alpha job offer to stay at Bradley. He does not allege that Bradley offered him the Director of Sales position for a definitive amount of time, but only that the position was "permanent." Under Indiana law, even a promise of "permanent" employment is not sufficient to allege independent consideration. *See Urbanski v. Tech Data*, 2008 WL 141574, *8 (N.D. Ind. 2008) (allegation that plaintiff was promised a "permanent job after she performed well for two months" did not change plaintiff's status as an at-will employee).

In sum, Mr. Hurlburt's allegations that he gave up a job offer to stay at Bradley in a different position has not been recognized as adequate consideration under Indiana law, such that Mr. Hurlburt's employment would not be considered at-will.

### 2. *Promissory Estoppel*

Mr. Hurlburt also alleges that his employment should not be considered at-will because his situation falls within the promissory estoppel exception to the doctrine. [Filing No. 30 at 3.] Mr. Hurlburt does not expand on that argument, focusing instead on the adequate consideration exception discussed above. Out of an abundance of caution, however, the Court will discuss whether this exception applies.

The promissory estoppel exception to the employment-at-will doctrine applies when the plaintiff "'plead[s] the doctrine with particularity, demonstrating that the employer made a promise to the employee, the employee relied on the promise to his detriment, and the promise otherwise fits within the Restatement test for promissory estoppel.'" *Harris v. Brewer*, 49 N.E.3d 632, 644

(Ind. Ct. App. 2015) (quoting *Peru School Corp. v. Grant*, 969 N.E.2d 125, 133 (Ind. Ct. App. 2012)). The Restatement (Second) of Contracts provides, in relevant part:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981).

Mr. Hurlburt alleges in the Complaint that Bradley offered him the Director of Sales position to "entice and induce" him to stay at Bradley, that he accepted Bradley's offer, and that he relied upon Bradley's promises to his detriment. [Filing No. 21 at 2-4.] He alleges that "[d]uring [an] email exchange, [he] was told that his position as Director of Sales would be a permanent position." [Filing No. 21 at 3.] But Mr. Hurlburt does not allege that the promise of permanency is the factor that he relied upon in making his decision to stay – he only alleges generally that he relied upon "Defendant's oral promises to his detriment."[2] [Filing No. 21 at 4.] And significantly, based on Mr. Hurlburt's own allegations, the alleged promise of a "permanent position" was made "[d]uring [an] email exchange," that occurred *after* Mr. Hurlburt had already accepted Bradley's offer to become Director of Sales. [Filing No. 21 at 3 (Mr. Hurlburt alleging that he accepted the offer to become Director of Sales during a June 5, 2015 telephone conversation, and that he was told the position would be permanent in "a series of emails that followed the June 5, 201[5] conversation").] According to the allegations in the Complaint, since the "promise" of permanency came after Mr. Hurlburt had already accepted the Director of Sales position, it could not have

---

[2] The only oral promises Mr. Hurlburt alleges Bradley made were Mr. Bradley's offers during a June 5, 2015 telephone conversation to promote Mr. Hurlburt to Director of Sales and to "increase his salary substantially." [Filing No. 21 at 3.] According to Mr. Hurlburt's own allegations, both of these things occurred.

induced him to accept the position.³  Accordingly, the promissory estoppel exception to Indiana's employment-at-will doctrine does not apply here.

The Court finds that Mr. Hurlburt has not adequately alleged that he was anything other than an at-will employee at Bradley.  The Court will address the effect of this finding, as well as Bradley's other dismissal arguments, below.

### B. Breach of Contract Claim

Because the Court has found that Mr. Hurlburt has not adequately alleged that he fell within an exception to Indiana's employment-at-will doctrine, Bradley could terminate his employment at any time and for any reason.  *See Orr*, 689 N.E.2d at 717.  Accordingly, Mr. Hurlburt's breach of contract claim fails at the outset.  *See Kpotufe v. J.B. Hunt Transport, Inc.*, 2011 WL 6092159, *5 (S.D. Ind. 2011) (breach of contract claim failed as a matter of law because plaintiff was an at-will employee).

Bradley argues, however, that even if Mr. Hurlburt was not an at-will employee, his breach of contract claim still fails because Mr. Hurlburt does not allege that he had a contract with Bradley or an enforceable contract for definite employment, or that Bradley breached a contract.  [Filing No. 27 at 10-11.]  Bradley argues that the only allegation that could support the notion of an oral contract is Bradley's offer to promote Mr. Hurlburt to Director of Sales and to increase his salary substantially – both of which occurred according to Mr. Hurlburt's own allegations.  [Filing No.

---

³ Bradley attaches to its opening brief an email exchange with Mr. Hurlburt that took place between May 29, 2015 and June 1, 2015, urges the Court to consider the emails because they are mentioned in the Complaint, and argues that they show that Bradley never promised that the Director of Sales position was a permanent position.  [Filing No. 26-1; Filing No. 27 at 7.]  The Court need not consider the emails because, as discussed above, Mr. Hurlburt's own allegations indicate that he did not rely on a promise of permanency when he accepted the Director of Sales position.  Moreover, the Complaint refers to emails from after June 5, 2015, and the emails Bradley submits are from before that time period.

27 at 11-12.] Bradley also contends that Mr. Hurlburt does not adequately allege a contract for a definite term of employment, or a detriment to him that would constitute legal consideration for allegedly being told his position would be permanent. [Filing No. 27 at 12-13.]

Mr. Hurlburt responds that he has adequately alleged that Bradley offered him a promotion to Director of Sales with a substantial pay increase, and that Bradley's representations led him to reasonably believe that the Director of Sales position would be a permanent position – one that "a reasonable person, including [Mr. Hurlburt], would perceive to be of similar permanency to the position he turned down at [Alpha]." [Filing No. 30 at 5.] Mr. Hurlburt argues that he has adequately pled that an oral contract existed.

On reply, Bradley argues that "[Mr. Hurlburt] does not claim that Bradley offered him permanent employment. Instead, [Mr. Hurlburt] asserts that he developed a belief that his position would be permanent…. This one-sided, mistaken assumption is insufficient to create the existence of a contract for a definite term for the purposes of establishing a breach of contract claim. If any contract existed it was for a promotion and a raise, which [Mr. Hurlburt] received." [Filing No. 31 at 4.]

Under Indiana law, "[i]t is well-settled that [t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Duncan v. Greater Brownsburg Chamber of Commerce, Inc.*, 967 N.E.2d 55, 57 (Ind. Ct. App. 2012) (second alteration in original) (citations and quotation marks omitted); *see also Corry v. Jahn*, 972 N.E.2d 907, 913 (Ind. Ct. App. 2012) (elements of breach of contract claim are "the existence of a contract, the defendant's breach thereof, and damages"). Here, Mr. Hurlburt does not allege that a contract existed, but only that Bradley offered to promote him to Director of Sales and to increase his salary (both of which

occurred according to Mr. Hurlburt's own allegations), and that during an email exchange Bradley told Mr. Hurlburt his position as Director of Sales would be permanent. As discussed above, Mr. Hurlburt alleges that the promise of permanency was made after he had already accepted the offer to become Director of Sales. Thus, any contract that may have existed could not have included the condition that it was permanent – that condition did not arise until after any alleged "contract" had been entered into, and is the only condition Mr. Hurlburt alleges Bradley did not satisfy.

Additionally, Mr. Hurlburt alleges his oral contract with Bradley was "permanent" or, in other words, for an indefinite term. Under Indiana law, because a contract for permanent employment cannot be performed within a year, it must be in writing to satisfy the Statute of Frauds. *Urbanski*, 2008 WL 141574 at *7 (dismissing breach of contract claim because alleged oral contract for permanent employment was not in writing as required by the Statute of Frauds, so was not a valid contract). Mr. Hurlburt's breach of contract claim fails for this additional reason.

Even if Mr. Hurlburt were not considered an at-will employee, he has not adequately alleged a breach of contract claim because he has not alleged the existence of a contract for permanent employment. He accepted Bradley's offer to become Director of Sales before any promise by Bradley of permanency took place, and his allegations of an oral contract are not sufficient under Indiana law and the Statute of Frauds.[4]

### C. Promissory Estoppel Claim

Bradley argues that Mr. Hurlburt fails to allege a promissory estoppel claim because his allegations are conclusory and do not support a promissory estoppel claim in any event. [Filing No. 27 at 14-15.]

---

[4] Mr. Hurlburt also has not alleged that he gave valid legal consideration when entering into any contract for permanent employment. As discussed above, turning down the job offer from Alpha does not constitute adequate consideration.

Mr. Hurlburt responds that he has adequately alleged a promissory estoppel claim because he alleged that Bradley convinced him to accept the Director of Sales position, that he accepted it with the understanding that it would be a permanent position, and that he relied on Bradley's promises to his detriment.  [Filing No. 30 at 7.]

On reply, Bradley reiterates its argument that Mr. Hurlburt does not allege he relied on a promise that the Director of Sales position would be permanent.  [Filing No. 31 at 4.]

Promissory estoppel is a quasi-contractual remedy that permits recovery where no contract exists.  *Ind. Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 367 (Ind. Ct. App. 2008).  To adequately allege a claim for promissory estoppel, Mr. Hurlburt must allege: "(1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise."  *Turner v. Nationstar Mortg., LLC*, 45 N.E.3d 1257, 1265 (Ind. Ct. App. 2015).

Mr. Hurlburt's promissory estoppel claim fails for the same reasons he does not fit within the promissory estoppel exception to the employment-at-will doctrine.  He does not allege that Bradley made a promise upon which he was induced to rely, nor that he actually relied upon. Specifically, as discussed above, Mr. Hurlburt alleges that Bradley offered to promote him to Director of Sales and to increase his salary substantially, that Mr. Hurlburt accepted Bradley's offer, and that Bradley then told him the position would be permanent.  [Filing No. 21 at 3.]  His allegations indicate that he did in fact become Director of Sales and was paid a higher salary.  His claims are based on the fact that he was terminated so the position was not permanent, but his own allegations indicate that he did not rely on a promise of permanency in accepting the offer to become

Director of Sales – he had already accepted the offer when the promise of permanency was allegedly made. He has not adequately alleged that Bradley made a promise which he was induced to rely upon, so has failed to allege a promissory estoppel claim.

### D.  Negligent Misrepresentation Claim

Finally, Bradley argues that Mr. Hurlburt fails to adequately allege a claim for negligent misrepresentation because he does not allege that Bradley supplied false information or failed to exercise reasonable care or competence in obtaining or communicating information to him. [Filing No. 27 at 16.] Bradley contends that Mr. Hurlburt also does not allege that Bradley promised him permanent employment, or that he relied on being told his position was permanent. [Filing No. 27 at 16.]

In response, Mr. Hurlburt argues that he alleges that when he told Bradley about the Alpha offer, Bradley told him he would be promoted to Director of Sales, as a consequence he declined the Alpha offer, but Bradley's representation turned out to be false because he was terminated from the Director of Sales position. [Filing No. 30 at 8.]

On reply, Bradley contends that its representation that Mr. Hurlburt would be promoted to Director of Sales was not false because he was promoted to that position. [Filing No. 31 at 4.]

Indiana courts have described the elements of a negligent misrepresentation claim as follows: "'One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information.'" *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind. Ct. App. 2007) (quoting *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 628-29 (Ind. Ct.

App. 1983)).  Mr. Hurlburt's negligent misrepresentation claim fails for the same reason his promissory estoppel claim fails – he has not adequately alleged that he justifiably relied upon any false information provided by Bradley.  The only potentially false information Bradley could have provided was that the Director of Sales position was permanent and, as discussed above, Mr. Hurlburt's own allegations indicate that he did not rely on that information in deciding to accept the Director of Sales position because he accepted the position before receiving that information.  He has not adequately alleged a negligent misrepresentation claim.

### IV.
#### CONCLUSION

Based on the foregoing, the Court **GRANTS** Bradley's Motion to Dismiss Second Amended Complaint, [Filing No. 26], and **DISMISSES** Mr. Hurlburt's claims **WITH PREJUDICE**.[5]

Date: 11/2/2016

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[5] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its complaint as a matter of course in response to a motion to dismiss.  *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011).  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."  Mr. Hurlburt amended his Complaint once in response to Bradley's first motion to dismiss, and then chose to brief the current Motion to Dismiss and adjudicate the issues.  The Court is not required to give Mr. Hurlburt another chance to plead his claims because he has already had multiple opportunities to cure deficiencies in his pleadings.  *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).  Further, Mr. Hurlburt has not given any indication that he could, in fact, successfully amend his complaint to cure the defects identified above, even if given the opportunity to do so.  Considering the procedural history of this case, particularly the fact that Mr. Hurlburt has already had the opportunity to re-plead his allegations, the Court, in its discretion, dismisses Mr. Hurlburt's claims with prejudice.